**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| STEPHEN HAUSE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MAJOR JAMES HARRIS, )<br>for Lexington County Detention )<br>Center in his individual and or )<br>official capacity, )<br>)<br>Defendant. )<br>_____) | Civil Action No. 0:07-270-JFA-BM<br><br>**REPORT AND RECOMMENDATION** |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who at the time this action was filed was a pretrial detainee at the Lexington County Detention Center, alleges violations of his constitutional rights by the named Defendant.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on August 10, 2007. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on August 14, 2007, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. However, the Court's Roseboro order addressed to the Plaintiff was returned to the Clerk as being undeliverable.[1] The

---

[1]This was not the first time there had been problems encountered with respect to Plaintiff's whereabouts. Plaintiff was released from jail sometime after the filing of this action, but failed to provide the Court with a new address. This resulted in a motion to dismiss being filed by the Defendant on April 26, 2007. A change of address notice was eventually received from the Plaintiff on May 7, 2007; however, when a Roseboro order (relating to the motion to dismiss) was mailed to the Plaintiff at his new address, the Clerk's office received a telephone call from Plaintiff's mother

(continued...)

1

Court subsequently received a notice of change of address from the Plaintiff indicating that he was now in the custody of the South Carolina Department of Corrections, resulting in the Roseboro order being re-mailed to the Plaintiff on September 12, 2007.

Pursuant to this re-mailed Roseboro order, Plaintiff had until October 15, 2007 to respond to the motion for summary judgment. Plaintiff sent a letter to the Court complaining about how he was being housed and treated, but he did not file a response to the motion for summary judgment or seek an extension by the deadline. On October 23, 2007, the Court received yet another change of address notice from the Plaintiff, indicating that he was now in the Allendale Correctional Institution.

Defendant's motion for summary judgment, which has been pending for almost three months, is now before the Court for disposition.[2]

**Background and Evidence**

Plaintiff alleges in his verified Complaint[3] that while housed at the Lexington County Detention Center he was confined in "unconstitutional" overcrowded conditions and was forced to

---

[1](...continued)
advising that her son was back in the Lexington County Jail, and providing a new address. Subsequently, yet another notice of change of address was received from the Plaintiff on July 13, 2007.

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

2



sleep on the floor "on numerous occasions."  Plaintiff also alleges that for a two to two and a half week period he suffered the "DTs (or withdrawals)", and that he also "suffered roaches, spiders - which inflicted painful & dangerous bites."  Plaintiff alleges that his "DTs" were the result of medical providers deliberately taking him off of "absolutely required highly addictive pain medication and epilepsy/anxiety medication," which had been prescribed by pain management specialists. Plaintiff alleges that he requested solitary confinement so that he could have observation for his health problems, but that there was no observation.

Plaintiff alleges that he is "100% permanently disabled/handicapped and had been confined in so-called medical observation for almost 5 (five) months in a 1 man cell, with 2 to 3 inmates in same cell."  Plaintiff also complains that he was kept in this cell, which was  "extremely cold both day & night", for twenty-three to twenty-four hours per day, seven days per week. Plaintiff also alleges that on several occasions, when he was required to move or travel, that he was "forced to crawl on my hands & knees as medical refused to provide me with a wheelchair, and also refused to let my mother...leave my own personal wheelchair on 2 different occasions."

Plaintiff alleges that his physician, Dr. J.M. Venegas of Chapin Family Practice, has prescribed legally required pain and epilepsy/anxiety medications for him, and that he faxed Plaintiff's prescription requirements (apparently to the jail).  Plaintiff alleges that he was "later told" that he had suffered three grand mal type seizures, but that he does not suffer from grand mal epilepsy.  Rather, Plaintiff alleges that he suffers from complex partial epilepsy.   Plaintiff also alleges that the physician at the jail is not qualified to treat his pain disorder, and has also refused to treat his severe, chronic spinal cord fusion and severe bursitis in his shoulders.

Plaintiff also complains that he was denied access to legal research materials,

3



including case books and statutes, and that he filed numerous inmate requests and grievances concerning this matter, none of which were ever responded to. Plaintiff alleges that he requires either Court appointed counsel or daily access to a full and complete law library in order to research his criminal case, and then goes on to complain about how his criminal case was being handled by the court system, the solicitor, and his public defender.

Plaintiff also complains that he had not received any hot meals for "a week", and that the food is "completely unseasoned". Plaintiff also complains that the rules of the jail are enforced arbitrarily by each of the different shifts, that his rights are being violated because he is routinely being "viewed" by members of the opposite sex while in various stages of undress and while performing private bodily functions, that prisoners are denied the right to adequate outside recreation, denied access to reading materials or to free newspapers, and are denied access to television. Plaintiff also seems to complain that his mail is being improperly opened out of his presence, including his legal mail.

Plaintiff seeks various injunctive and/or declaratory relief, as well as monetary damages. See generally, Verified Amended Complaint.

In support of summary judgment in the case, the Defendant has submitted an affidavit from Ronald O'Neill, who attests that he is the Inmate Services Commander at the Lexington County Detention Center. O'Neill attests that Plaintiff was incarcerated at the Detention Center from September 2, 2006 until he was released on bond on March 30, 2007, and that Plaintiff was then readmitted to the Detention Center on June 19, 2007, when his bond was revoked, and was thereafter held until released into the custody of the South Carolina Department of Corrections. O'Neill attests that a true and correct copy of Plaintiff's medical records are attached to his affidavit as Exhibit A,

4



and that a copy of Plaintiff's booking and release sheets are attached to his affidavit as Exhibit B.

O'Neill attests that the Detention Center contracts out to independent contractors to provide medical services, food services, and pest control services for the inmate population at the Detention Center. The health contract is with Prison Health Services (PHS), which O'Neill attests employs qualified and licensed medical providers at the Detention Center. The contract for food services is with ABL, Inc. O'Neill attests that ABL is required to have a licensed dietician prepare the menu for the jail, with three nutritionally balanced meals a day to be served to each inmate. Finally, the Detention Center has a pest control contract with Bugman Pest Elimination, Inc., which O'Neill attests has an exterminator come once a month and/or as needed to service the facility.

O'Neill attests that the Detention Center is not equipped with a law library, but that a review of Plaintiff's records shows that he was represented by counsel during his period of incarceration at the Lexington County Detention Center. O'Neill attests that all inmates at the Detention Center are allowed access to their attorneys, by appointment, seven days a week. Further, O'Neill attests that all indigent inmates are provided pleading forms, stamps, envelopes, and writing materials to be used to file legal papers, and that Plaintiff was provided writing materials and litigation pleading forms during his period of incarceration at the Detention Center, as is evidenced by the Complaint and amended Complaint filed in this case.

O'Neill acknowledges that during the period of Plaintiff's incarceration the Lexington County Detention Center was overcrowded, but attests that all inmates are issued a mattress, a pair of shoes, a wash cloth, a towel, one uniform, two sheets, and a blanket upon being booked into the Detention Center. O'Neill attests that while the inmate population exceeds the design goal for the facility, it is not overcrowded in the sense that the number of inmates at the Detention Center exceeds

5



its capacity to provide security, shelter, food, medical supplies, and other necessary services to inmates during their incarceration. O'Neill attests that inmates are regularly required to be triple celled, with most of the cells at the Detention Center having two beds in a room with the third inmate being provided with a mattress on the floor.

O'Neill attests that Plaintiff was temporarily housed on the first floor of the Detention Center for medical observation, and that this was done because the cells on the first floor are closer to the area of the Detention Center where medical is housed, and because this area of the Detention Center is always manned with two guards. O'Neill attests that while these cells only have one bed, they are equipped with a toilet and sink. Further, Plaintiff himself requested to be housed on medical observation. See O'Neill Affidavit, Exhibit C (Incident Reports). With respect to Plaintiff's claim concerning a wheelchair, O'Neill attests that Plaintiff's medical records show that he was allowed to have a wheelchair sometimes, and was also allowed to have a walker and a shower chair. O'Neill further attests that Plaintiff's medical records show that he received substantial amounts of medical care during his incarceration at the Detention Center.

O'Neill attests that the food service facilities at the Detention Center are regularly inspected by DHEC, and that the facility has maintained an A rating from DHEC for at least the past two years. See also, O'Neill Affidavit, Exhibit D (DHEC inspection findings). With respect to Plaintiff's Complaint about being exposed to insects and receiving spider bites, O'Neill attests that he has reviewed Plaintiff's medical records and cannot find where Plaintiff ever complained of being bitten by a spider during his incarceration at the Detention Center. O'Neill further attests that he is not aware of any significant incidents of inmates complaining of spider bites while at the Detention Center.



With respect to recreation, O'Neill attests that recreation time is only taken from inmates who refuse to go to recreation, or if the recreation time has been forfeited through the inmate disciplinary process. As for Plaintiff's complaint about extremely cold temperatures, O'Neill attests that the Detention Center is kept at 75 degrees in the summer and 70 degrees in the winter. Further, each inmate is provided with sheets and a blanket.

Finally, O'Neill attests that the Detention Center has an inmate grievance procedure whereby an inmate can submit a grievance form, and which also includes an appeal process. O'Neill attests that while Plaintiff did grieve some of the issues set forth in his amended Complaint, he did not grieve all of these issues. Further, Plaintiff accepted the responses given to the grievances at issue. See also, O'Neill Affidavit, Exhibit B.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a

7



Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the pleadings, briefs and evidence submitted in this case, the undersigned finds and concludes that Plaintiff's claims are without merit, and that this case should be dismissed.

**I.**

First, since Plaintiff is no longer incarcerated at the Lexington County Detention Center, to the extent he has requested declaratory and/or injunctive relief, his claims are moot. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ["[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."]; Taylors v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) [holding that prisoner's transfer mooted a request for declaratory and injunctive relief]. *Cf.* Powell v. McCormack, 395 U.S. 486, 496 (1969) ["[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."]; Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987); Buie v. Jones, 717 F.2d 925, 927-929 (4th Cir. 1983); Weinstein v. Bradford, 423 U.S. 147, 149 (1975). Therefore, Plaintiff's claims for declaratory and/or injunctive relief are subject to dismissal.

**II.**

With respect to Plaintiff's claim for monetary damages, a claim for monetary damages generally survives an inmate's transfer to another institution. Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003) [finding that transfer to another jail did not moot damages claim for a suit filed pursuant to § 1915(g)]; Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976). Therefore, Plaintiff's claims for monetary damages in this case are not moot, and are not subject to dismissal on the grounds that Plaintiff is no longer housed at the Lexington County Detention Center.



Nevertheless, Defendant argues that Plaintiff failed to exhaust his administrative remedies, at least with respect to some of his claims, and that his claims are therefore subject to dismissal on that basis. Exhaustion of administrative remedies prior to bringing a federal lawsuit is required by 42 U.S.C. § 1997e(a) ["No action shall be brought with respect to prison conditions under Section 1983 of this Title or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"]. However, since Plaintiff did obviously grieve at least some of these issues, and further attests in his verified Complaint that he never received responses to many grievances and/or that his grievances were met with threats, for purposes of summary judgment the undersigned has proceeded to address Plaintiff's claims on the merits. See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [following the lead of the...other circuits that have considered the issue, we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) [stating that prison's failure to timely respond renders administrative remedies unavailable].

**III.**

With respect to the merits of Plaintiff's claims, the Defendant Harris, as a public employee, is generally subject to suit for damages under § 1983 in his individual capacity. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). Construed liberally, Plaintiff is asserting his damages claims against Harris in his individual capacity.

However, Plaintiff makes no allegations concerning Harris in his Complaint, and it

9



is readily apparent that the only reason Harris is named as the Defendant is because he is the administrator of the jail. As the jail administrator during the time period at issue (which Harris concedes), Harris may only be held liable for the acts and conduct complained of if they were the result of an official policy or custom for which he was responsible.  See Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)). However, a review of the allegations of Plaintiff's amended Complaint shows that he fails to allege anywhere in his Complaint that the conditions and actions he complains of were the result of an official policy or custom for which Harris was responsible.  Therefore, the Defendant is entitled to summary judgment for failure of the Plaintiff to assert a viable claim against him. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1999) ["liability...must be based on the personal involvement of the defendant"], cert. denied, 522 U.S. 1154 (1999); Wilson v. Cooper, 922 F.Supp. 1286, 1293 (N.D.Ill. 1996). See also Horton v. Marovich, 925 F.Supp. 540 (N.D.Ill.  1996) ["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right"].

## IV.

Finally, even assuming that Plaintiff had alleged that the conditions and conduct complained of were pursuant to an official policy or custom for which Harris was responsible sufficient to survive summary judgment on that ground, the evidence before the Court is still not sufficient for Plaintiff to survive Defendant's motion.  Plaintiff has himself put in no evidence to

10



support the allegations of his Complaint, which are by themselves too general and conclusory and lacking in evidentiary support to give rise to an issue of fact as to whether a constitutional violation has occurred. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]. In order to survive summary judgment, Plaintiff must present evidence sufficient to give rise to a genuine issue of fact as to whether he was deprived of a serious basic human need, and that in doing so the responsible officials acted with a sufficiently culpable state of mind. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993); Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"].[4] However, as noted, Plaintiff has submitted no evidence whatsoever in support of his claims.

Even assuming Plaintiff's allegation that he was kept in a cell with two other inmates to be true for purposes of summary judgment, the evidence (and even Plaintiff's own allegations) reflect that he was provided with a mattress and other amenities. See O'Neill Affidavit; Exhibit A, pp. 35 and 37. This allegation is not in and of itself evidence of a constitutional violation. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991) ["[I]t is well established that 'double or triple celling of inmates is not per se unconstitutional.'"]; Mathias v. Simpkins, No. 07-31, 2007 WL 1577336 at *2 (W.D.Va. May 31, 2007). Indeed, the failure to provide a mattress *at all* does not necessarily amount to a constitutional violation. *Cf.* Grissom v. Davis, 55 Fed.Appx. 756, 757-758 (6th Cir. 2003) [No violation where Plaintiff endured seven day mattress restriction but suffered no more than a de

---

[4] While Plaintiff was only a pretrial detainee during the time period at issue, the deliberate indifference standard applied to convicted prisoners still applies. See Hill v. Nicodemus, 979 F.2d 987, 991-992 (4th Cir. 1992); see also Bell v. Wolfish, 441 U.S. 520, 535, n. 16 (1979); Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1998) [holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections].

11



minimis physical injury]; Lopez v. South Carolina Dept of Corrections, No. 06-2512, 2007 WL 2021875, at *3 (D.S.C. July 6, 2007) [Dismissing claim by prisoner that he was not provided, in part, with a mattress, where prisoner failed to assert significant physical or emotional injury]; Eady v. Sawyer, No. 02-1225, 2005 WL 2206249, at *5 (S.D.Ill. Sept. 12, 2005) [case dismissed where, although Plaintiff may have experienced some discomfort, he made no viable claim of physical harm suffered due to temporary lack of mattress or pillow]; McGoldrick v. Farrington, 462 F.Supp.2d 112, 113-114 (D. Me. 2006).

    To the extent Plaintiff is asserting a medical claim, there is no evidence before the Court sufficient to survive summary judgment. The record reflects that Plaintiff was housed where he was because Plaintiff had himself requested to be placed on medical observation. O'Neill Affidavit, Exhibit C, p. 46. Plaintiff was also provided with a walker and a shower chair to meet his medical needs, and a review of the medical records provided to the Court does not reveal any constitutional violations. See O'Neill Affidavit, and Attached Exhibits A & C. Plaintiff cannot simply allege in a conclusory fashion that he did not receive adequate medical care or attention, provide no supporting evidence, and expect to survive summary judgment. Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; see Scheckells v. Goord, 423 F.supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; see also Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir.



2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim]).

As for the remainder of Plaintiff's claims, the evidence shows that Plaintiff's recreation was taken from him on only one occasion, when he was belligerent to detention officers; O'Neill Affidavit Exhibit C, p. 1; and that he was provided with necessary bedding materials, including an additional blanket. Plaintiff has provided no evidence to refute any of the information contained in O'Neill's affidavit and his attached exhibits concerning the general conditions at the jail, including the temperature, quality of food service, or any of the other information provided in these exhibits.  The undersigned can discern no evidence of a constitutional violation in the evidence presented to the Court, and Plaintiff cannot rely simply on his conclusory claims and allegations to avoid dismissal of his case. House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994); see Harris v. Murray, 761 F.Supp. 409, 415  (E.D.Va. 1990) ["Plaintiff does not state a constitutional claim for inadequate nutrition merely because there were occasions when plaintiff considered his food inedible or inadequately warmed."]; Waring v. Meachum, 175 F. Supp.2d 230, 239 (D.Conn. 2001) [cold diet without fruits and vegetables for a short time period not a constitutional violation]; Landfair v. Sheahan, 911 F.Supp. 323, 325-326 (N.D.Ill. 1995) [pretrial detainee who alleged that due to overcrowding, he was forced to sleep on floor, and contracted meningitis, failed to state a claim because he did not set forth specific facts showing that he actually



had meningitis]; Isaac v. Fairman, No. 92-3875, 1994 WL 63219, * 5-6 (N.D.Ill. 1994) [allegation that prisoner was provided only one uniform and denied adequate opportunity to wash did not state claim]; Wilson v. Cook County Bd. of Commissioners, 878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [pretrial detainee failed to establish that overcrowding, inadequate staffing, inadequate opportunity for exercise, and inadequate grievance procedures in detention facility violated detainee's due process rights, as detainee failed to allege remedial injury]; Chavis v. Fairman, No. 94-1503, 1995 WL 156599 at * 5-6 (7th Cir. Apr. 6, 1995) ["Generally, even dramatic restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have ample opportunity to enjoy indoor activity"]; Kidwell v. Buchanan, No. 93-15056, 1993 WL 230224 at **1 (9th Cir. June 29, 1993) [Where temporary restriction of amenities was found not to be cruel and unusual punishment].

Plaintiff must realize that he himself was responsible for his being placed in a county jail, where conditions are oftentimes less than ideal. See Hadley v. Peters, No. 94-1207, 1995 WL 675990 * 8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988)). That does not, however, mean that his constitutional rights were violated absent some evidence to support such a claim. Hagans v. Lavine, 415 U.S. 528, 536-537 (1974) [federal courts should not entertain claims that are "so attenuated and unsubstantial as to be absolutely devoid of merit"]; White v. White, 886 F.2d 721, 723 (4th Cir. 1989) [Dismissal of suit proper where Plaintiff's complaint "failed to contain any factual allegations tending to supporting his bare assertion"]; cf. Griffin v. DeRosa, 153 Fed.Appx. 851, 852-853 (3rd Cir. Nov. 3, 2005) [finding plaintiff's allegations insufficient to show that prison officials were deliberately indifferent to prisoner's health or safety, as required to state Eighth Amendment claim for failure to protect].

14



Finally, since Plaintiff is no longer housed at the Lexington County Detention Center, even if he had evidence to support his claims of unconstitutional conditions existing at the jail, in order to obtain monetary damages he would have to provide evidence to show that he suffered an injury as a result of his incarceration at that facility. See 42 U.S.C. § 1997e(e) ["No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injuries suffered while in custody without a prior showing of physical injury"]. Plaintiff has failed to present evidence to show, or indeed even to allege, that he suffered any remedial injuries as a result of the conditions of confinement complained of in his Complaint. Therefore, summary judgment on his damages claim is appropriate. See Rankin v. Klevenhagen, 5 F.3d 103, 108 (5th Cir. 1993)[certainly some injury is required]; Norman v. Taylor, 25 F.3d at 1263 [absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment claim if his injury de minimis]; See also Thaddeus-X v. Wozniak, No. 99-1720, 2000 WL 712383 at **3 (6th Cir. May 23, 2000)[Plaintiff must show he suffered more than de minimis injury]; Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)[Without proof of more than de minimis physical injury, Plaintiff cannot maintain his claim]; Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"].

While Plaintiff may have some state law claim he could pursue with regard to the conditions of his confinement while he was housed at the Lexington County Detention Center, absent some evidence of an injury suffered by the Plaintiff as a result of conditions deemed to be unconstitutional, the undersigned does not find that Plaintiff has submitted sufficient facts to raise a genuine question as to whether his constitutional rights were violated to survive summary

15



judgment. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]. Therefore, Plaintiff's claim for monetary damages based on the general conditions of his confinement while at the Lexington County Detention Center should be dismissed.

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

November 9, 2007



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

17

